# In the United States Court of Federal Claims

No. 15-434C

(Filed: September 29, 2015)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| **RONALD L. CARAWAY, et al.,** | ) | Claim for back pay by former managers and supervisors of the FAA's Atlanta TRACON; jurisdiction to address claims under the FAA's Personnel Management System |
| **Plaintiffs,** | ) | |
| v. | ) | |
| **UNITED STATES,** | ) | |
| **Defendant.** | ) | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Gerald Cunningham, Pensacola Beach, Florida, for plaintiffs.

James Sweet, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the briefs were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Robert Kirschman, Jr., Director, and Franklin E. White, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Judge.

This action by former managers and supervisors of the Federal Aviation Administration ("FAA") seeks an award of back pay under the FAA's Personnel Management System ("PMS"). Pending before the court is the government's motion to dismiss plaintiffs' amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss ("Def.'s Mot."), ECF No. 8. The government's principal contention is that claims for back pay by FAA employees are not cognizable in this court. Def.'s Mot. at 6-7. The issue has been briefed by the parties, and a hearing was held on September 10, 2015. For the reasons that follow, the court concludes that it has no jurisdiction to address plaintiffs' claims.

## BACKGROUND

The plaintiffs are 22 former managers, supervisors, and other non-bargaining unit employees who worked at the FAA's Air Traffic Control Tower in Atlanta ("Atlanta

TRACON") from 2002 through 2004, and who had retired or separated from the FAA prior to 2011. Am. Compl. ¶¶ 1, 33, 34. During those years, the FAA had an agreement with the National Air Traffic Controllers Association ("NATCA"), that required the FAA to grade airport facilities. Am. Compl. ¶ 24. The agreement provided that if a facility was upgraded, the pay schedule of that facility's employees would be raised to the next level. Am. Compl. ¶ 25. The Atlanta TRACON was graded at ATC-12 in 2001. Am. Compl. ¶ 24.

The Atlanta TRACON was the world's busiest airport in 2001, experiencing record-breaking traffic, and in 2002 the FAA recognized the Atlanta TRACON as the FAA Southern Region Air Traffic Control Facility of the Year for 2001. Am. Compl. ¶ 23-24. The next year, the FAA again recognized the Atlanta TRACON as the FAA Southern Region Facility of the Year for 2002. Am. Compl. ¶ 26. Notwithstanding these circumstances, the FAA did not upgrade the facility to ATC-13, the highest possible level of an air traffic control terminal facility within the FAA. Am. Compl. ¶¶ 24, 27. The FAA did, however, split the Atlanta TRACON into two facilities, the Atlanta Air Traffic Control Tower and the Atlanta Terminal Radar Facility, which effectively reduced traffic counts at each and eliminated their eligibility for an upgrade to the ATC-13 level. Am. Compl. ¶¶ 28-29.

Believing that the Atlanta TRACON should have been upgraded, NATCA filed a grievance with the FAA, and the parties settled the dispute in January 2011. Am. Compl. ¶¶ 30-31. The settlement provided that the FAA would pay back pay to all bargaining unit employees who worked at Atlanta TRACON during the disputed periods of time, including bargaining unit employees who were retired as of 2011. Am. Compl. ¶¶ 31, 33, & Ex. 3 (Settlement Agreement).

The plaintiffs, being managers, supervisors, and staff, were not members of NATCA, and the settlement did not extend to them. Am. Compl. ¶ 31. In March 2011, however, the FAA unilaterally decided to extend the settlement to non-bargaining unit employees who worked at Atlanta TRACON during the relevant times. Am. Compl. ¶ 34. This decision meant that all employees who worked during the disputed times would get back pay, even though they were not members of NATCA. Am. Compl. ¶ 34.

At some point after March 2011, the FAA modified its back pay decision, deciding that non-bargaining unit employees who were retired or separated at the time of the 2011 settlement would not receive settlement funds. Am. Compl. ¶ 37. This meant that the plaintiffs here would not take part in the settlement. Am. Compl. ¶¶ 37, 39. In response, plaintiff Steven Kimsey sent an e-mail to David Grizzle, FAA Acting Chief Operating Officer, and Richard Ducharme, Deputy Chief Operating Officer, asking "why the FAA would not make the payments" to the former supervisors and managers. Am. Compl. ¶ 41. Mr. Ducharme replied on August 1, 2011, confirming that Mr. Kimsey could not take part in the settlement. Am. Compl. ¶ 42.

On October 19, 2011, plaintiffs filed a notice of intent to sue with the Equal Employment Opportunity Commission pursuant to 29 C.F.R. § 1614.201(a), alleging age discrimination. *See Caraway v. Secretary, United States Dep't of Transp.*, 550 Fed. Appx. 704, 706 (11th Cir. 2013). Thereafter, plaintiffs filed a complaint in the United States District Court for the Northern District of Georgia, alleging that they ranged in age from 51 to more than 68 years old, and the

FAA's decision not to award them back pay amounted to discrimination based on age. *See Caraway v. LaHood*, No. 1:12-cv-00411-JOF (N.D. Ga. filed Feb. 8, 2012). In a decision rendered on February 12, 2013, the district court dismissed the action, ruling that plaintiffs' allegations did not give rise to "any plausible inference . . . of age discrimination." *Caraway v. LaHood*, No. 1:12-cv-00411-JOF, slip op. at 9 (N.D. Ga. Feb. 12, 2013), *aff'd sub nom. Caraway v. Secretary, United States Dep't of Transp.*, 550 Fed. Appx. 704 (11th Cir. 2013). On appeal, the Eleventh Circuit affirmed the dismissal. *Caraway*, 550 Fed. Appx. at 711.

Roughly contemporaneously, on October 15, 2012, counsel for the plaintiffs filed an action under the Freedom of Information Act seeking documents and other records relating to the FAA's decisionmaking with respect to back pay for former managers and supervisors. Am. Compl. ¶ 47; *see Cunningham v. Federal Aviation Admin.*, No. 1-12-cv-3577-TWT (N.D. Ga. filed Oct. 12, 2012). The FAA responded that it had limited records: "[B]ecause most of the decision making and direction regarding the pay for supervisors and managers occurred orally, [the FAA] believes that there is no further documentation within its offices." Decl. of Walter R. Cochran, Terminal Services-Vice President (Nov. 17, 2012) (quoted in Am. Compl. ¶ 50). The district court concluded that an adequate search for records had been made and granted the FAA's motion for summary judgment. *See Cunningham v. Federal Aviation Admin.*, No. 1:12-cv-3577-TWT, slip op. at 16 (N.D. Ga. Aug. 29, 2013).

Plaintiffs filed this action on April 29, 2015, challenging their exclusion from the settlement by seeking back pay under the PMS and asserting that this court has jurisdiction over their claim under the Tucker Act, 28 U.S.C. § 1491(a).

## STANDARDS FOR DECISION

When considering motions under RCFC 12(b)(1) and 12(b)(6), the court must distinguish between its inquiries into jurisdiction and the merits. *See Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011). A court deciding a motion under 12(b)(1) must determine whether jurisdiction is proper and must not reach the merits. *See Greenlee Cnty. v. United States*, 487 F.3d 871, 876 (Fed. Cir. 2007). "Only after this initial inquiry is completed and the Court of Federal Claims takes jurisdiction over the case does it consider the facts specific to the plaintiff's case to determine 'whether on the facts [the plaintiff's] claim f[alls] within the terms of the statutes.'" *Id.* (quoting *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005)); *see also Jan's Helicopter Serv., Inc. v. Federal Aviation Admin.*, 525 U.S. 1299, 1306 (Fed. Cir. 2008). The distinction is important because "a dismissal on the merits usually carries *res judicata* effect whereas a dismissal for lack of jurisdiction typically does not." *Engage Learning*, 660 F.3d at 1355.

When assessing a motion to dismiss under RCFC 12(b)(1), the court will "normally consider the facts alleged in the complaint to be true and correct." *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). "A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *Reynolds*, 846 F.2d at 748).

Plaintiffs assert that jurisdiction is proper under the Tucker Act, Am. Compl. ¶ 2, which confers jurisdiction on the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "[T]he Tucker Act itself does not create a substantive cause of action." *Jan's Helicopter Serv.*, 525 F.3d at 1306. To jurisdictionally support a claim, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Fisher*, 402 F.3d at 1172. In this respect, "the claimant must demonstrate that the source of substantive law he relies upon 'can be fairly interpreted as mandating compensation by the Federal Government for the damages sustained.'" *United States v. Mitchell*, 463 U.S. 206, 216-17 (1983) (quoting *United States v. Testan*, 424 U.S. 392, 400 (1976)); *see also Fisher*, 402 F.3d at 1173.

Even if a statute is money-mandating, "Congress may withdraw any grant of Tucker Act jurisdiction" by vesting jurisdiction exclusively in another forum. *Texas Peanut Farmers v. United States*, 409 F.3d 1370, 1373 (Fed. Cir. 2005); *see also Biltmore Forest Broadcasting FM, Inc. v. United States*, 555 F.3d 1375, 1383-84 (Fed. Cir. 2009) (holding that the Court of Federal Claims lacked jurisdiction when a statute vested exclusive jurisdiction in a circuit court); *Tulsa Airports Improvements Trust v. United States*, 120 Fed. Cl. 254, 258-63 (2015) (same). Moreover, the Federal Circuit "has long held that the Court of Federal Claims does not have jurisdiction over a case that could be heard by the [Merit Systems Protection Board]." *Pueschel v. United States*, 297 F.3d 1371, 1378 (Fed. Cir. 2002) (citing *McClary v. United States*, 775 F.2d 280, 282 (Fed. Cir. 1985)); *see also Gallo v. United States*, 529 F.3d 1345, 1352 (Fed. Cir. 2008) (concluding that the Court of Federal Claims has no jurisdiction over a claim that could be heard by the Board).

## ANALYSIS

Plaintiffs claim entitlement to back pay under Chapter II, § 9(a) of the PMS. Am. Compl. ¶ 16; Pls.' Opp'n to Def.'s Mot. to Dismiss ("Pls.' Opp'n), ECF No. 10, at 1.[1] The PMS is a regulatory regime promulgated by the FAA in 1996 pursuant to 49 U.S.C. § 40122(g), which permits the FAA to design and adopt its own employment rules and exempts the agency from most of Title 5 of the United States Code. *See Gonzalez v. Department of Transp.*, 551 F.3d 1372, 1374-75 (Fed. Cir. 2009). Section 9(a) sets forth rules for back pay of FAA employees, and in this case, plaintiffs assert that this court has jurisdiction because this provision is money-mandating. Pls.' Opp'n at 1. The government disagrees, arguing that (1) the PMS back-pay provision vests jurisdiction exclusively in forums other than the Court of Federal Claims, (2) this court lacks jurisdiction because the plaintiffs do not seek presently due money, and (3) even if this court has jurisdiction, the plaintiffs have failed to state a claim. Def.'s Mot. at 6-9.

---

[1]For brevity, further citation to the back pay provisions of the PMS will omit the chapter, appearing only as "Section 9(a)."

## A.  *Jurisdiction Over PMS Back Pay Claims*

Section 9(a) provides that "[a]gency funds may be used to pay back pay to [a] FAA employee or former employee who, as the result of a decision or settlement under [1] the FAA Grievance Procedure, [2] a collective bargaining agreement, [3] FAA Appeals Procedure, or [4] the Executive System Appeals Procedure is found by an appropriate authority to have been affected by an unjustified or unwarranted personnel action that resulted in the withdrawal, reduction, or denial of all or part of the pay, allowances, and differentials otherwise due to the employee."  Am. Compl. Ex. 1 (PMS), Ch. II, § 9(a).  The PMS thus permits an award of back pay through one of these four methods.

The Grievance Procedure, Appeals Procedure, and Executive System Appeals Procedure apply only to a limited number of circumstances listed in the PMS.  *See* PMS Ch. III, § 4(c) (Grievance Procedure does not apply to appointments, retirement, or matters covered by other appeals process); PMS Ch. III, § 5(a) (Appeals Procedure applies only to "covered" actions, including "removals for conduct, performance or non-disciplinary removals; furloughs"); PMS Ch. VI, § 3 (Executive System makes use of agency-wide appeals processes).  Appeals under these procedures are either subsequently unreviewable, *see* PMS Ch. III, § 4(f)(ii) (Grievance Procedure unreviewable), or reviewable only in a federal regional circuit court of appeals, *see* PMS Ch. III, § 5(m) (Appeals Procedure reviewable only in circuit courts).

For agency actions not covered by these procedures, the PMS is silent as to how a FAA employee may challenge adverse agency action.  A portion of the FAA's governing statute, 49 U.S.C. § 40122(g)(3), provides some clarification by stating that "[u]nder the [PMS], an employee of the Administration may submit an appeal to the Merit Systems Protection Board and may seek judicial review of any resulting final orders or decisions of the Board from any action that was appealable to the Board under any law, rule, or regulation as of March 31, 1996."[2]  Thus an employee aggrieved under the PMS may appeal agency actions not covered by the specifically listed procedures to the Board.[3]

In particular, Paragraph (g)(3) of Section 40122 grants the Board authority to award back pay to FAA employees under the Back Pay Act, 5 U.S.C. § 5596.  *See Hankins v. Department of Transp.*, 118 M.S.P.R. 499, 503 (M.S.P.B. Sept. 11, 2012).  Before 2012, the Federal Circuit held that the Board had no authority to grant back pay, reasoning that Paragraph 40122(g)(1) exempted the FAA from the Back Pay Act.  *See Gonzalez*, 551 F.3d at 1375-77.  But in February 2012, Congress amended Paragraph 40122(g)(3) to state that "[n]otwithstanding any other provision of law, retroactive to April 1, 1996, the Board shall have the same remedial authority

---

[2]This provision was adopted on April 5, 2000, upon the enactment of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-181, § 307(a), 114 Stat. 61.  The amendment has retroactive application.  *See Rivera v. Department of Transp.*, 94 M.S.P.R. 216, 220-21 (M.S.P.B. Sept. 11, 2003).

[3]Subsection 40122(h) addresses the appeals process for employees subject to a collective bargaining agreement, allowing them to appeal "through any contractual grievance procedure that is applicable to the employee."  49 U.S.C. § 40122(h).

over such employee appeals that it had as of March 31, 1996." *See FAA Modernization and Reform Act of 2012*, Pub. L. No. 112-95, § 611, 126 Stat. 11 (2012).  That remedial authority includes the Back Pay Act.  *See Gallo v. Department of Transp.*, 689 F.3d 1294, 1302 (Fed. Cir. 2012) ("The Board possesses authority to award compensation under the Back Pay Act.").

In short, FAA employees can seek judicial review of the FAA's refusal to award back pay under Section 9(a), if at all, only from a federal regional circuit court of appeals or the Board.  Paragraph 40122(g)(3) and Section 9(a) therefore ostensibly withdraw any grant of Tucker Act jurisdiction from this court by vesting judicial review exclusively in forums other than the Court of Federal Claims.  *See Woodruff v. United States*, 80 Fed. Cl. 806, 815 (2008) (observing that back pay claims must be brought in forums other than the Court of Federal Claims); *see also Black v. United States*, 56 Fed. Cl. 19, 28-30 (2003) (dismissing claims arising under PMS for lack of jurisdiction); *Alkalay v. United States*, 54 Fed. Cl. 93, 97 (2002) (dismissing claims for back pay under the PMS).

Plaintiffs nonetheless argue that *Brodowy v. United States*, 482 F.3d 1370, 1375-76 (Fed. Cir. 2007), shows that this court has jurisdiction over PMS back pay claims. That argument is not persuasive.  *Brodowy* does not address the PMS back pay provision.  *Brodowy* concerned an interim, temporary pay provision applicable during the FAA's transition from the General Schedule of pay for federal employees to the then-new PMS provisions.  Prior to 1996, the FAA was subject to Title 5 of the United States Code and its money-mandating provisions. *See Gonzalez*, 551 F.3d at 1374-75.  The Department of Transportation and Related Agencies Appropriations Act of 1996 exempted the FAA from most of Title 5 and delegated authority to the agency to promulgate its own personnel management system. *See* Pub. L. No 104-50, § 347, 109 Stat. 436, 460 (1995), *as amended by* Pub. L. No. 104-122, § 1, 110 Stat. 876 (1996). During the transition to the PMS system, the FAA temporarily adopted certain provisions of Title 5, including 5 U.S.C. § 5334(b).  *See Brodowy*, 482 F.3d at 1375 (observing that the plaintiffs "were being paid pursuant to . . . the administrative order that adopted the GS pay system *for the interim period* pending conversion of the air traffic controllers [to the PMS.]") (emphasis added).  The *Brodowy* plaintiffs sought pay under Subsection 5334(b), which is a money-mandating provision, and so the Federal Circuit held that the Court of Federal Claims had jurisdiction over the claims.  *See Brodowy*, 482 F.3d at 1375-76 ("Treating the references to section 5334(b) in the complaint as directed to the Administrator's regulatory adoption of the standards of that statute as well as the other portions of the G[eneral ]S[chedule] statutory scheme, we hold that the Personnel Management System was a binding, money-mandating regulation and that the Court of Federal Claims had jurisdiction over the plaintiffs' claim on that basis.").

*Brodowy* is thus not on point for three reasons. First, *Brodowy* did not interpret the current PMS, but instead interpreted 5 U.S.C. § 5334(b) as temporarily adopted by the FAA. Second, *Brodowy* did not address the PMS back pay provisions related to a grievance or appeals, or which are otherwise within the purview of the Merit Systems Protection Board since 2012, and thus are outside this court's jurisdiction.  *See Pueschel,* 297 F.3d at 1378.  Third, even if *Brodowy* did stand for the proposition that the PMS is money-mandating, this does not by itself mean this court has jurisdiction over PMS back pay claims; even if a statute is money-mandating, this court may not exercise jurisdiction if the law vests jurisdiction exclusively in

other forums. *See Texas Peanut Farmers*, 409 F.3d at 1373 ("Congress may withdraw any grant of Tucker Act jurisdiction"). In this instance, Section 9(a) and 49 U.S.C. § 40122(g)(3) vest jurisdiction only in the federal regional circuit courts of appeals or the Board.

Accordingly, this court lacks subject matter jurisdiction over plaintiffs' claims and must dismiss the action pursuant to RCFC 12(b)(1).[4]

---

[4]In an effort to salvage jurisdiction, plaintiffs moved on September 22, 2015, for leave to file a Second Amended Complaint. *See* Pls.' Mot. for Leave to File Second Am. Compl., ECF No. 15. In pertinent part, the Second Amended Complaint alleges that plaintiffs' claim is based on the agreement "between the FAA and the NATCA, entered into on January 24, 2011, related to all grievances concerning the failure to pay upgrade wages to the bargaining unit employees." Second Am. Compl. ¶ 54. It further alleges that in 1998, Administrator Garvey extended provisions of the 1998 FAA-NATCA collective bargaining agreement to managers and supervisors, Second Am. Compl. ¶ 18, and that "in conformance" with this 1998 extension, the FAA in March of 2011 extended the terms of the 2011 settlement "to all current and former managers, supervisors and staff members who worked at the Atlanta ATC Facility[.]" Second. Am. Compl. ¶ 58. Put concisely, the second amended complaint alleges that the 2011 FAA-NATCA settlement was a "settlement under . . . a collective bargaining agreement" within the meaning of Section 9(a), and the 1998 Garvey letter required to FAA to extend all future agreements between NATCA and the FAA to non-NATCA employees like the plaintiffs, whether or not they were currently employed by the FAA.

Plaintiffs' effort to bring themselves within the FAA-NATCA collective bargaining agreement for purposes of the 2011 settlement has jurisdictional shortcomings. First, this court is dubious that plaintiffs could invoke the collective bargaining agreement because by the plaintiffs' own pleadings, they are not bargaining unit employees, Second Am. Compl. ¶ 34, and were not part of the 2011 settlement between NATCA and the FAA. Second Am. Compl. ¶¶ 31, 34. Second, even if they could establish that they were bargaining unit employees (or even third-party beneficiaries of the collective bargaining agreement), this court would still lack jurisdiction. This is because Subsection 40122(h) provides that appeals by bargaining unit employees must be brought pursuant to the grievance procedures in a collective bargaining agreement itself. And, plaintiffs do not allege that they have followed a grievance procedure defined in any collective bargaining agreement. The Federal Circuit found jurisdiction lacking for this reason in *Todd v. United States*. 386 F.3d 1091, 1094 (Fed. Cir. 2004) (finding no jurisdiction where non-bargaining unit FAA managers and supervisors alleged a right to recovery under NATCA agreement). Third, plaintiffs' argument that Administrator Garvey's 1998 letter somehow entitles the plaintiffs to the benefits of the 2011 settlement between NATCA and the FAA is incorrect. The Garvey letter explains the FAA's 1998 decision to pay supervisors and managers in certain offices on the same scale as bargaining unit employees. Am. Compl. Ex. 2, ECF No. 6-2; *see also Behm v. United States*, 68 Fed. Cl. 395, 403-04 (2005) (describing the 1998 Garvey letter in the context of a claim under the Equal Pay Act). It did not prospectively bind the FAA on matters such as this.

In sum, plaintiffs' proffered Second Amended Complaint does not serve to establish this court's jurisdiction over plaintiffs' claims. As the Federal Circuit observed in *Todd*, "[t]he [collective bargaining agreement] includes its own enforcement provisions . . . . [Plaintiffs], in

B. *Jurisdiction Over Claims Not for Presently Due Money*

Alternatively, this court lacks jurisdiction to the extent plaintiffs seek a retroactive promotion and pay based on such a promotion. "The established rule" for federal employees "is that one is not entitled to the benefit of a position until he has been duly appointed to it." *United States v. Testan*, 424 U.S. 392, 402 (1976) (citing *United States v. McLean*, 95 U.S. 750 (1878) ("The law imposes no obligation upon the government to pay an increased salary, unless a readjustment has preceded it.")); *see also Todd*, 386 F.3d at 1094 (same); *Calvin v. United States*, 63 Fed. Cl. 468, 474 (2005) (same). "Without first obtaining the reclassification and retroactive promotion," a plaintiff has "no claim for money damages against the United States." *Todd*, 386 F.3d at 1095. And, "[a]bsent a claim for presently due money damages against the United States, the Court of Federal Claims does not have jurisdiction under the Tucker Act[.]" *Id.*

The plaintiffs allege that the Atlanta TRACON should have been upgraded, and thus that they should have received a pay increase. Am. Compl. ¶¶ 27, 56. To the extent plaintiffs seek back pay on this ground, they do not seek presently due money because they do not allege they were ever appointed to a higher pay grade. *See Todd*, 386 F.3d at 1095 (finding no claim for presently due money when FAA employees argued that their airport facility should have been upgraded). For this alternative reason, the court has no jurisdiction to consider plaintiffs' claims.

C. *Failure to State a Claim*

Because the court lacks jurisdictional power to consider plaintiffs' claims, it is inappropriate to address the government's contention that plaintiffs fail to state a claim upon which relief may be granted under RCFC 12(b)(6).

**CONCLUSION**

For the foregoing reasons, the government's motion to dismiss for lack of subject matter jurisdiction is GRANTED pursuant to RCFC 12(b)(1).[5] The clerk is directed to enter judgment in accord with this disposition.

No costs.

It is so ORDERED.

s/ Charles F. Lettow
Charles F. Lettow
Judge

---

essence, seek to gain the benefit of the [collective bargaining agreement], and at the same time, to circumvent the exclusive grievance procedures of the contract." *Todd*, 386 F.3d at 1094.

[5]Plaintiffs' motion for leave to file a second amended complaint is GRANTED, but the grant of that motion is nonetheless unavailing to avoid dismissal on jurisdictional grounds.